UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| PAUL WILLIAM LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:16-CV-486-TAV-HBG |
| | ) | |
| DARLENE M. WALKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This civil action is before the Court on the following motions: (1) plaintiff's Motions for Entry of Judgment by Default [Docs. 20, 21]; (2) defendant Kris Lewallen's ("Lewallen") Motion for Extension of Time To Answer or Otherwise Plead [Doc. 25]; (3) defendant Darlene Walker's ("Walker") Motion To Dismiss [Doc. 27]; (4) defendant Thomas Barclay's ("Barclay") Motion To Dismiss [Doc. 36]; (5) defendants Bill Miller ("Miller") and Blake Murphy's ("Murphy") Motion To Dismiss [Doc. 41]; (6) defendant Lewallen's Motion To Dismiss [Doc. 43]; (7) plaintiff's Proposed Motion To Supplement and or Amend Complaint [Doc. 74]; and (8) plaintiff's Objection to United States Magistrate Judge Order Entered 06/16/17 Granting Defendants Second Motion To Stay Discovery [Doc. 92]. The parties filed responses and replies to the pending motions [Docs. 26, 30, 35, 38, 47–49, 51, 54, 59, 69, 75–78, 86, 93–96].

For the reasons that follow, the Court will: (1) deny plaintiff's Motions for Entry of Judgment by Default; (2) grant defendant Lewallen's Motion for Extension of Time To Answer or Otherwise Plead; (3) grant defendant Walker's Motion To Dismiss; (4) grant

defendant Barclay's Motion To Dismiss; (5) grant defendants Miller and Murphy's Motion To Dismiss; (6) grant defendant Lewallen's Motion To Dismiss; (7) deny plaintiff's Proposed Motion To Supplement and or Amend Complaint; and (8) deny as moot plaintiff's Objection to United States Magistrate Judge Order.

## I.    Background[1]

On March 7, 2014, plaintiff alleges that he was drugged by his live-in girlfriend, Angeletta Crowley, and her son, Corbin Crowley, by mixing Xanax with plaintiff's food [Doc. 1 p. 3]. As a result, plaintiff passed out [*Id.* at 4]. Angeletta and Corbin Crowley then robbed plaintiff of his prescription medication, which included 90 Morphine Sulfate 60 milligram ("MG") tablets and 120 Oxycodone 15 MG tablets [*Id.* at 4]. The next day, plaintiff filed a police report, and defendant Miller, an Oneida City Police Officer, was assigned to investigate plaintiff's complaint [*Id.*]. During investigation, Corbin Crowley admitted to Miller that Angeletta Crowley took plaintiff's medication [*Id.*]. Angeletta Crowley was not, however, arrested or charged with the crime [*Id.*].

One month later, plaintiff was arrested and charged with the felony offense of sale of a schedule II narcotic, based on information provided by a confidential informant [*Id.*]. At plaintiff's arraignment, the state court appointed defendant Walker to represent plaintiff [*Id.*]. Plaintiff informed Walker that he had never sold drugs [*Id.*]. Walker later presented

---

[1] For purposes of the motions to dismiss, the Court takes all of plaintiff's allegations from the complaint [Doc. 1] as true.

plaintiff with a plea bargain offer from the state, which he accepted after learning that Walker did not file any discovery motions or further research plaintiff's claims regarding Corbin and Angeletta Crowley, as he had requested [*Id.*].

Corbin and Angeletta Crowley signed affidavits stating facts concerning plaintiff's arrest that he claims would have exonerated him if presented to a jury [*Id.* at 5]. After sending copies of these affidavits to Walker, plaintiff requested that Walker move to withdraw his guilty plea [*Id.*]. Corbin Crowley informed plaintiff that Barclay from the District Attorney's Office called him questioning him about the affidavits [*Id.*]. Barclay told Corbin that he does not have to stick to his statements that he made in the affidavit [*Id.*]. Following the phone call, Angeletta and Corbin Crowley allegedly began receiving daily calls from defendant Murphy, a drug agent for the Oneida City Police Department, threatening to arrest them for signing the affidavits [*Id.*]. Because of the pressure from Murphy and Barclay, Angeletta and Corbin Crowley changed their stories and recanted the statements in their affidavits [*Id.*].

A confidential informant met with drug agents Lewallen and Murphy and stated that he could go to plaintiff's residence and purchase Oxycodone pills from plaintiff for $20.00 each [*Id.* at 6]. Murphy searched the confidential informant's vehicle, and Lewallen searched the informant's person [*Id.*]. Neither search revealed narcotics or money [*Id.*]. Lewallen then gave the informant $40.00 in cash, along with a recording device, and the informant went to plaintiff's house to exchange the money for the oxycodone [*Id.*].

Following the confidential informant's purchase of the two Oxycodone pills, plaintiff was arrested for a second time on August 4, 2014, and charged with two counts of sale of a schedule II narcotic and one count of coercion [*Id.* at 5]. Despite an objection by Barclay, the state court again appointed Walker to represent plaintiff with regard to these new charges [*Id.*]. Although plaintiff originally intended to take the matter to trial, he chose to accept the guilty plea offered to him [*Id.* at 8]. Pursuant to the guilty plea, plaintiff was sentenced to a total of five years' unsupervised probation and a fine of $6,000.00 [*Id.*].

On December 15, 2014, plaintiff filed a *pro se* Rule 28 post-conviction motion for relief from judgment and sentence, along with a motion for appointment of counsel and for a full evidentiary hearing [*Id.*]. In plaintiff's Rule 28 motion, he presented five grounds that he argued warranted the dismissal of charges for which he was convicted: (1) the unlawful obtainment of plaintiff's conviction and sentence; (2) the failure of due process of law because the prosecution withheld evidence that favored plaintiff; (3) the violation of plaintiff's right to a fair trial by impartial jury, confrontation, cross-examination, and to not be a witness against himself; (4) plaintiff's counsel actively representing conflicting interests, thereby providing plaintiff with ineffective assistance of counsel; and (5) plaintiff's plea of guilty being based on coercion, manipulation, inducements, incomprehension, terror, ignorance, and threats [*Id.* at 9].

In his Complaint before this Court, plaintiff now claims that Walker, Barclay, Murphy, Lewallen, and Miller committed the tortious acts of fraud upon the Court and malicious prosecution, which in turn deprived plaintiff of life, liberty, and property without due process of law, in violation of 18 U.S.C. § 1983 [*Id.* at 6, 12].

The Court will address the following pending motions in turn: (1) plaintiff's motions for default judgment, (2) plaintiff's motion to amend his complaint, (3) defendants' motions to dismiss, and (4) plaintiff's motion for reconsideration of Magistrate Judge Guyton's order.

## II.     Motions for Default Judgment

In his first Motion for Default Judgment, plaintiff asks the Court to enter default judgment against defendant Lewallen because Lewallen failed to respond within twenty-one days following service of the summons, which typically entitles a plaintiff to judgment by default [Doc. 20 pp. 1–2]. In his second Motion for Default Judgment, plaintiff asks the Court to enter default judgment against defendant Barclay [Doc. 21 p. 1], similarly because Barclay failed to respond with an answer or a motion as required by Rule 12 of the Federal Rules of Civil Procedure [*Id.* at 2].

### A.     Legal Standard

Entry of default is appropriate only where a party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Default judgment is an "extreme sanction" and should not be imposed absent "a clear record of delay or contumacious conduct" by the offending party and when "no alternate sanction would protect the integrity of the pre-trial

proceedings." *Davis v. City of Dearborn*, No. 2:09-CV-14892, 2011 WL 1060744, at *1–2 (E.D. Mich. Mar. 23, 2011) (internal citations omitted).

A court should consider four specific factors when determining whether to impose default judgment: "(1) whether the disobedient party acted in willful bad faith; (2) whether the opposing party suffered prejudice; (3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment; and (4) whether less drastic sanctions were imposed or considered." *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008).

### B. Analysis

With regard to plaintiff's motion for default judgment against defendant Lewallen [Doc. 20], it appears to the Court that plaintiff served Pam Lawson, rather than Lewallen [Doc. 26 p. 1]. Under Federal Rule of Civil Procedure 4(e), service may be made upon an individual by: (1) following state law for serving a summons; (2) delivering a copy of the summons and complaint to the individual personally; (3) leaving a copy of the summons and complaint at the individual's dwelling or place of abode with someone of suitable age and discretion who resides there; or (4) delivering a copy of each to an agent authorized by appointment to receive service of process. Fed. R. Civ. P. 4(e). Thus, plaintiff's service upon Pam Lawson did not properly effect service upon Lewallen because plaintiff has offered no evidence that Pam Lawson is Lewallen's authorized agent by appointment or operation of law, or that Lewallen evaded or attempted to evade service [*Id.* at 2]. *See* Tenn. R. Civ. P. 4.04 (stating that service upon an individual shall be executed by

"delivering a copy of the summons and of the complaint to the individual personally, or if he or she evades or attempts to evade service, by leaving copies thereof . . . with some person of suitable age and discretion [residing at the individual's abode]").

Thus, because plaintiff did not properly serve Lewallen initially, the Court finds that an entry of default judgment against Lewallen would be inappropriate. Furthermore, plaintiff has not provided the Court with evidence that Lewallen acted in willful bad faith or that plaintiff has suffered prejudice due to the minor delay. *Grange Mut. Cas. Co.*, 270 F. App'x at 376. Indeed, Lewallen filed his motion for an extension of time to answer [Doc. 25] on October 26, 2016, approximately one month after plaintiff attempted to serve him [Doc. 6]. Consequently, the Court will deny plaintiff's motion for default judgment against defendant Lewallen.

As to plaintiff's motion for default judgment against defendant Barclay [Doc. 21], the Court notes that Barclay's counsel entered a notice of appearance [Doc. 8] and filed a motion for an extension of time to respond to plaintiff's complaint [Doc. 16] within twenty-one days of service upon Barclay. Thus, the Court finds that Barclay did not fail to plead or otherwise defend, and default judgment is not, therefore, warranted as to defendant Barclay. *See* Fed. R. Civ. P. 55. Consequently, the Court will also deny plaintiff's motion for default judgment against Barclay.

### III. Motion To Amend Complaint[2]

Plaintiff also moves the Court to grant him permission to supplement and/or amend his complaint, pursuant to Federal Rule of Civil Procedure 15 [Doc. 74 p. 1]. Plaintiff seeks this permission for a number of reasons, including that he made a mistake as to the identity of the parties, and the original complaint should have been brought against the following additional defendants: the Honorable E. Shayne Sexton ("Judge Sexton"), David Pollard ("Pollard"), and Jeffrey C. Coller ("Coller") [*Id.* at 2].[3]

Defendants Walker and Lewallen submit that plaintiff's motion to amend is deficient because it does not set forth which allegations in the proposed amended complaint are new, modified, or have been removed from the original complaint [Doc. 75 p. 1; Doc. 76 p. 1]. However, *pro se* litigants, such as plaintiff, are held to "less stringent" standards

---

[2] While the motions to dismiss were filed before the motion to amend, granting a motion to dismiss before addressing a pending motion to amend can be an abuse of discretion. *See Thompson v. Superior Fireplace Co.*, 931 F.2d 372, 373 (6th Cir. 1991) ("At the time of the dismissal of the employer, however, the district court had not yet ruled on plaintiff's motion to amend her complaint. As a result, we reverse the dismissal of the employer and remand for consideration of plaintiff's motion to amend.").

[3] The Court notes that plaintiff's amended complaint may potentially seek to add claims against the City of Oneida and Scott County as well [Doc. 74-1 p. 3]. This is not clear, however, due to plaintiff's ambiguous formatting. Even if the Court were to construe plaintiff's amended complaint as bringing causes of action against Oneida and Scott County, such claims would not survive a motion to dismiss and would, therefore, be futile. *See Miller v. Calhoun Cty.*, 408 F.3d 803, 807 (6th Cir. 2005) ("Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss.").

Indeed, a municipality may only be held liable where "a custom, policy, or practice attributable to the municipality was the moving force behind the violation of plaintiff's constitutional rights." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). Here, plaintiff has alleged no such custom or policy attributable to Oneida or Scott County. Thus, if plaintiff intended to bring claims against these municipalities in his amended complaint, the Court would deny those amendments as futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

than lawyers. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Consequently, the Court will decline to deny plaintiff's motion to amend on this ground.

Defendants also claim that the Court should deny plaintiff's motion because the proposed amendments are futile [Doc. 75 p. 2; Doc. 76 p. 2; Doc. 78 p. 1]. Specifically, defendant Barclay argues that the new claims in the proposed amended complaint would be futile due to the defense of absolute immunity [Doc. 77 p. 1]. He also argues that the proposed amended complaint violates Federal Rule of Civil Procedure 8.01 because it contains only conclusory allegations regarding conspiracy, bias, and conflicts of interest [*Id.* at 2].

A. **Legal Standard**

After the twenty-one-day period during which a party may amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave," however, "when justice so requires." *Id.* Leave is appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009).

"Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d

803, 807 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)). A district court has discretion to deny a motion to amend if the amendments are futile. *Foman*, 371 U.S. at 182. In determining whether an amendment would survive a motion to dismiss, courts must construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4]

**B.    Analysis**

Here, plaintiff seeks to add claims against proposed defendants Judge Sexton, Pollard, and Coller for committing "fraud upon the court" and acts of malicious prosecution [Doc. 74 p. 2]. He argues that, but for a mistake with regard to the identity of the parties, he would have brought his original claims against these defendants, in addition to the original defendants [*Id.*].

---

[4] When an amendment is untimely, the Court looks to Rule 15(c) of the Federal Rules of Civil Procedure to determine whether the new or proposed claims "relate back" to a timely, original pleading and are thus saved from being time barred by expiration of the statute of limitations. *Mayle v. Felix*, 545 U.S. 644, 656–57 (2005); Fed. R. Civ. P. 15(c)(1). Even if the Court determined that plaintiff's amendments relate back to his original complaint and that the original complaint was timely filed, however, the Court finds that his amended claims would nevertheless be futile, for the reasons discussed herein.

Specifically, plaintiff alleges that Judge Sexton, of the Scott County Criminal Court, improperly refused to recuse himself from plaintiff's post-conviction proceedings due to an alleged, personal bias against plaintiff [*Id.* at 2–3]. With regard to proposed defendant Pollard, an Assistant District Attorney, plaintiff claims that Pollard unilaterally altered the original plea agreement in plaintiff's case [*Id.* at 3]. Plaintiff next alleges in his amended complaint that Coller, his court-appointed, post-conviction attorney, refused to bring to light Pollard's fraudulent conduct [*Id.* at 3–4]. Thus, according to plaintiff, these additional defendants should also be held jointly and severally liable for all damages suffered by plaintiff due to their fraudulent and malicious actions [*Id.* at 4].

Plaintiff did not file his motion to amend within the twenty-one-day period during which he could amend as a matter of course under Rule 15. Thus, the Court must decide whether to grant plaintiff leave to amend his complaint. *See* Fed. R. Civ. P. 15(a)(2). Plaintiff does not appear to be requesting leave out of bad faith or a dilatory motive, and he has not repeatedly failed to cure deficiencies. *See Leary*, 349 F.3d at 905.

With regard to plaintiff's proposed claims against his post-conviction attorney, Coller, "[a] court-appointed attorney is not liable for deprivations of constitutional rights under 42 U.S.C. § 1983 for the reasons that counsel does not act under color of state law." *Pagani-Gallego v. Escobedo*, 149 F.3d 1184, 1998 WL 381562, at *1 (6th Cir. 1998) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 321 (1981)). Thus, plaintiff has no cognizable claim against Coller under § 1983, and the Court finds that his motion to add Coller as a defendant in this matter is futile, even when taking into account the leniency afforded to

*pro se* litigants. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Neither [this] Court nor other courts . . . have been willing to abrogate basic pleading essentials in *pro se* suits.").

As to plaintiff's proposed claims against Judge Sexton, "[i]t is well established that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction" or the alleged wrongdoing was not committed by the judge in his or her official capacity. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). This immunity applies "even if a judge acts erroneously, corruptly, or in excess of his jurisdiction." *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997). Plaintiff's claims against Judge Sexton relate entirely to his conduct as a court official during plaintiff's post-conviction proceedings, and plaintiff does not allege that Judge Sexton's actions were taken "in the complete absence of any jurisdiction." *Bush*, 38 F.3d at 847. Thus, the Court finds that Judge Sexton is immune from suit under § 1983, and plaintiff's proposed claims against Judge Sexton also, therefore, fail for futility.

Finally, with regard to plaintiff's proposed claims against Assistant District Attorney Pollard, the Court notes that prosecuting attorneys acting within the scope of their prosecutorial duties are immune from suit under § 1983. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). When deciding whether absolute immunity applies, courts take a "functional approach" that looks to the nature of the function performed. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). The critical inquiry is how closely related the

prosecutor's challenged activity is to his role as an advocate within the judicial phase of the criminal process. *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000). Here, plaintiff's allegations against Pollard entirely relate to his conduct as a prosecutor—particularly, his handling of plaintiff's plea agreement and plea negotiations. None of the allegedly wrongful actions were committed by Pollard outside of the judicial phase of plaintiff's criminal process. Thus, Pollard is immune from suit, and plaintiff's proposed claims against him are futile.

In sum, plaintiff's amended complaint would not withstand a motion to dismiss, and the Court will, therefore, deny plaintiff's motion to amend because his proposed claims are futile [Doc. 74]. *See Foman*, 371 U.S. at 182; *Miller*, 408 F.3d at 807.

## IV. Motions to Dismiss

The Court will now examine defendants' motions to dismiss plaintiff's original complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Docs. 27, 36, 41, 43].

### A. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets forth a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). It requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In doing so, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Directv*, 487 F.3d at 476 (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

As noted herein, *pro se* litigants "are held to less stringent [pleading] standards than . . . lawyers[,] in the sense that a *pro se* complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan*, 951 F.2d at 110 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet, this Court's "lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). For

instance, federal pleading standards do not permit *pro se* litigants to proceed on pleadings that are not readily comprehensible. *Cf. Becker v. Ohio State Legal Servs. Ass'n*, 19 F. App'x 321, 322 (6th Cir. 2001) (upholding a district court's dismissal of a *pro se* complaint containing "vague and conclusory allegations unsupported by material facts").

## B.     Statute of Limitations

The Court will first address whether plaintiff's claims against defendants Walker, Lewallen, Miller, and Murphy should be dismissed pursuant to the applicable statute of limitations.[5]

### 1.     Law

The statute of limitations for a claim for relief under 42 U.S.C. § 1983 is governed by the state statute of limitations for personal injury claims. *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986) (citing *Wilson v. Garcia*, 471 U.S. 261, 275 (1985)). Because Tennessee's limitations period for actions brought for personal injuries is one year, plaintiff's § 1983 claims are, therefore, also subject to a one-year statute of limitations. *See Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); Tenn. Code Ann. § 28–3–104(a)(1).

The date on which the statute of limitations begins to run in a § 1983 action is a question of federal law. *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (citing *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)). Ordinarily, the

---

[5] Defendant Barclay does not move the Court to dismiss plaintiff's claims on the ground of the statute of limitations. Consequently, the Court will discuss Barclay's motion to dismiss on different grounds.

limitations period starts to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier*, 742 F.2d at 273. In determining when § 1983 actions accrue, courts should consider "what event should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991), *abrogated on other grounds*, *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810 (6th Cir. 2015).

## 2. Analysis

Here, defendants Walker, Miller, Murphy, and Lewallen argue that plaintiff's claims against them are time-barred because plaintiff was aware of his alleged injuries no later than December 15, 2014, when he filed his motion for post-conviction relief under Rule 28 [Doc. 27 p. 2].[6]

Indeed, three of the five grounds for plaintiff's Rule 28 motion were claims of ineffective assistance of counsel by defendant Walker, which forms the basis of his current claims against her [Doc. 1 p. 9]. Plaintiff also claimed in his Rule 28 motion that Miller and Murphy were liable because they were officers of the Oneida City Police Department, which committed fraud upon the court, and plaintiff suggested that defendant Lewallen

---

[6] Defendant Lewallen also moves the Court for an extension of time, permitting him up to and including November 10, 2016, to file a response to plaintiff's complaint [Doc. 25 p. 1]. This motion is a result of plaintiff failing to properly serve Lewallen, which left him unaware of this lawsuit until plaintiff filed a motion for entry of judgment by default [*Id.*]. Plaintiff's complaint contains many pages of single-spaced allegations, and Lewallen's counsel requested additional time to analyze the multitude of allegations and to submit an appropriate response [*Id.*]. Furthermore, the Court has granted other defendants in this matter extensions of time, including up to November 10, 2016, to answer plaintiff's complaint [*Id.*]. Accordingly, for good cause shown, the Court will grant Lewallen's motion for an extension of time. The Court will, therefore, consider Lewallen's motion to dismiss [Doc. 43] timely filed.

played a role in his alleged wrongful arrest and/or malicious prosecution [Doc. 44 p. 9].

Thus, the fact that plaintiff filed this motion on December 15, 2014, demonstrates that he

was aware of his alleged injuries caused by Walker, Miller, Murphy, and Lewallen, at the

latest, on that date.[7]  Consequently, the latest date plaintiff could have filed his cause of

action was December 15, 2015.  Plaintiff did not file his complaint and commence the

current action, however, until August 3, 2016.

Plaintiff argues that cases involving fraud can be re-opened at any time because

there is no statute of limitations for "fraud upon the court" [Doc. 38 p. 2; Doc. 39 p. 6].  He

cites, however, no legal authority in support of this proposition.  Plaintiff contends that

fraud upon the Court occurs when an officer of the Court commits fraud during court

proceedings [*Id.* at 7].  However, based on the Court's research into the subject, it appears

that "fraud on the court" typically arises within the context of a motion to set aside a

judgment pursuant to Rule 60(d).  *See Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*,

475 F. App'x 65, 71 (6th Cir. 2012) (examining a claim of fraud upon the court in the

context of a Rule 60 motion).

Furthermore, as stated by the Sixth Circuit, "Fraud upon the court

should . . . embrace only that species of fraud which does or attempts to, subvert the

---

[7] Plaintiff's arrest occurred on August 4, 2014.  Typically, the statute of limitations for claims related to a criminal proceeding begin to run at the time the claimant becomes detained pursuant to the legal process.  *Fox v. Desoto*, 489 F.3d 227, 235 (6th Cir. 2007).  Construing the facts here in the light most favorable to plaintiff, however, the Court will consider the date he filed the Rule 28 motion as the date on which he knew of the injuries caused by defendants Miller, Murphy, Walker, and Lewallen.

integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner." *Id.* (citing *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352–53 (6th Cir. 1993)); *see* Moore's Fed. Practice § 60.21(4)(c). Indeed, "[f]raud on the court refers to 'the most egregious conduct involving a corruption of the judicial process itself.'" *Gen. Med.*, 475 F. App'x at 71. The Sixth Circuit has previously noted the "inherent power" of courts to "grant relief for after-discovered fraud from an earlier judgment." *Demjanjuk*, 10 F.3d at 356. This is consistent with Federal Rule of Civil Procedure 60(d)(3), which permits a court to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).

In this case, plaintiff does not seek relief from a prior judgment of this Court but rather seeks to use fraud on the court as a cause of action to obtain redress for the damages incurred as a result of defendants' alleged fraud. Plaintiff has not cited, and the Court is not aware of, any decisions by courts in this circuit allowing for the doctrine of fraud on the court to be used to recover private damages under § 1983 for alleged fraud in prior litigation. Moreover, courts outside of this circuit have held that fraud on the court is "not a ground for the recovery of damages by a party in a later lawsuit." *See Bradbury v. GMAC Mortg., LLC*, 780 F. Supp. 2d 108, 112 (D. Me. 2011). As such, the Court does not find that "fraud on the court" is available as the basis for an independent recovery of damages.

Thus, the Court concludes that the statute of limitation period for causes of action under § 1983 applies to plaintiff's complaint. Because more than one year has elapsed between plaintiff's knowledge of his injury and his filing of this lawsuit, the Court finds

that the statute of limitations bars plaintiff's claims against defendants Walker, Miller, Murphy, and Lewallen. Consequently, plaintiff has not set forth a plausible claim for relief as to these defendants, and the Court will grant defendants Walker, Miller, Murphy, and Lewallen's motions to dismiss on this ground.

### C. Barclay's Motion to Dismiss

Defendant Barclay moves the Court to dismiss plaintiff's claims under Rule 12(b)(6), primarily based on his immunity under the Eleventh Amendment [Doc. 37 p. 6]. The Court will first address plaintiff's claims against Barclay in his official capacity and will then proceed by examining plaintiff's claims against Barclay in his individual capacity.[8]

#### 1. Official Capacity

Courts consistently consider attempts to bring suit against state officials in their official capacity the same as bringing suit against the state itself. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). The Supreme Court has held for many years that the Eleventh Amendment bars federal courts from exercising jurisdiction over actions involving a state, *Papasan*, 478 U.S. at 276, and this bar by the Eleventh Amendment extends to state officials when they are sued in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Therefore, unless a state waives its Eleventh Amendment

---

[8] The Court cannot conclusively determine whether plaintiff brings claims against Barclay, an Assistant District Attorney in his official capacity or in his individual capacity. Thus, it will examine plaintiff's claims as if he intends to bring claims against Barclay in both capacities.

immunity or Congress overrides it, one cannot sue a state directly or a state official in their official capacity. *Id.* at 167.

In order to state a claim under § 1983, plaintiff must allege violation of a right promised by the Constitution and laws of the United States and must show that the deprivation was committed by a person acting under color of state law. *Schorr v. Borough of Lemoyne*, 265 F. Supp. 2d 488, 491 (M.D. Pa. 2003). Neither state nor state officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. *Will*, 491 U.S. at 71.

Here, therefore, plaintiff's assumed allegations against Barclay in his official capacity are the same as if plaintiff filed suit against the state of Tennessee itself. *Id.* at 71. Congress has not overridden Tennessee's immunity—indeed, the Sixth Circuit has held on multiple occasions that "Congress did not intend to abrogate a state's sovereign immunity in suits for monetary liability with the promulgation of § 1983." *Berndt*, 796 F.2d at 881 (citing *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979); *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)); s*ee also Will*, 491 U.S. at 66 ("That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear in our decision in *Quern*."). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will*, 491 U.S. at 66.

Furthermore, the state of Tennessee has not consented to any such suit, either expressly or impliedly. Sixth Circuit precedent has long held that "section 20–13–102(a) of the Tennessee Code, which expressly prohibits any suits in state court against the state or where state treasury funds are potentially involved, also extends impliedly to suits brought in federal court." *Berndt*, 796 F.2d at 881 (citing Tenn. Code Ann. § 20–13–102(a)); s*ee Chaudhuri v. Tennessee*, 767 F. Supp. 860, 862–63 (M.D. Tenn. 1991) (dismissing § 1983 claims against the state of Tennessee as "barred by the Eleventh Amendment, which prohibits suits against a state or its agencies unless the state consents to such suit or Congress expressly abrogates the state's immunity.").

Consequently, the state of Tennessee is immune from suit under the Eleventh Amendment, and the Eleventh Amendment in turn bars plaintiff's claims against defendant Barclay in his official capacity. The Court will, therefore, grant defendant Barclay's motion to dismiss plaintiff's claims against him in his official capacity.

### 2. Individual Capacity

With regard to plaintiff's claims against Barclay in his individual capacity, as previously discussed herein, prosecuting attorneys acting within the scope of their prosecutorial duties are immune from suit against them individually. *Imbler*, 424 U.S. at 431. Without this immunity for prosecuting attorneys, "[t]he apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office." *Id.* at 424. Absent such immunity, "[t]he work of the prosecutor would thus be impeded, and we

would have moved away from the desired objective of stricter a fairer law enforcement." *Id.*

As discussed in evaluating plaintiff's proposed claims against Pollard, when deciding whether absolute immunity applies, courts take a "functional approach" that looks to the nature of the function performed, *Buckley*, 509 U.S. at 269, and the critical inquiry is how closely related the prosecutor's challenged activity is to his role as an advocate within the judicial phase of the criminal process. *Holloway*, 220 F.3d at 775. Courts have established that prosecutors are absolutely immune from allegations of non-disclosure or suppression of exculpatory information. *Imbler*, 424 U.S. at 430–31; *see also Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). In *Imbler*, the Supreme Court held that absolute immunity protected a prosecutor from allegations that he used false testimony and suppressed material evidence in order to obtain a conviction. 424 U.S. at 430–31. In *Koubriti*, the Sixth Circuit ruled that false testimony at trial, malicious prosecution, defamation, and nondisclosure of exculpatory information at trial are covered by absolute prosecutorial immunity. 593 F.3d at 467.

Here, plaintiff alleges that defendant Barclay: (1) suppressed exculpatory information, (2) allowed false testimony, (3) suppressed material evidence in order to obtain a conviction, (4) engaged in malicious prosecution, (5) committed fraud upon the court, (6) subpoenaed irrelevant witnesses, and (7) discussed potential testimony with a confidential informant [Doc. 1 pp. 5, 7, 8, 9, 12]. The Court finds that this alleged misconduct set forth in plaintiff's complaint relates to activities that fall within Barclay's

prosecutorial capacity; therefore, absolute prosecutorial immunity applies to defendant Barclay in his individual capacity. As a result, in areas where plaintiff's complaint can be read to assert a claim against Barclay in his individual capacity, absolute prosecutorial immunity shields him from liability.

Thus, the Court will grant defendant Barclay's motion to dismiss plaintiff's claims against him in his individual capacity on this ground, seeing as plaintiff has not stated a claim against Barclay upon which relief can be granted. As the Court finds that dismissal is appropriate on this basis, the Court declines to address Barclay's additional arguments in favor of dismissal.

## V. Plaintiff's Motion for Reconsideration of Magistrate Judge Order

Finally, the Court turns to Plaintiff's Objection to United States Magistrate Judge Order Entered 06/16/17 Granting Defendants Second Motion To Stay Discovery [Doc. 92]. In this motion, plaintiff objects to the Honorable Magistrate Judge Guyton's decision to extend the stay of discovery in this matter, pending a ruling on defendants' motions to dismiss [Doc. 90]. Having ruled on defendants' motions to dismiss herein, however, plaintiff's objection to Judge Guyton's Order is now moot. Thus, the Court will deny this motion as such.

## VI. Conclusion

Accordingly, for the reasons stated herein, the Court will: (1) **DENY** plaintiff's Motions for Entry of Judgment by Default [Docs. 20, 21]; (2) **GRANT** defendant Lewallen's Motion for Extension of Time To Answer or Otherwise Plead [Doc. 25]; (3)

**GRANT** defendant Walker's Motion To Dismiss [Doc. 27]; (4) **GRANT** defendant Barclay's Motion To Dismiss [Doc. 36]; (5) **GRANT** defendants Miller and Murphy's Motion To Dismiss [Doc. 41]; (6) **GRANT** defendant Lewallen's Motion To Dismiss [Doc. 43]; (7) **DENY** plaintiff's Proposed Motion To Supplement and or Amend Complaint [Doc. 74]; and (8) **DENY as moot** plaintiff's Objection to United States Magistrate Judge Order [Doc. 92].

The Clerk of Court will be **DIRECTED to CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE